**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
JACQUELINE LESTER,                                 :
                                                   :
               Plaintiff,                :    Civil Case No.
                                                   :
     v.                                           :    **COMPLAINT**
                                                   :
9300 REALTY MANAGEMENT INC., STEVEN                :
CROMAN, in his individual and professional         :    **Jury Trial Demanded**
capacities, and OREN GOLDSTEIN, in his             :
individual and professional capacities,            :
                                                   :
               Defendants.               :
------------------------------------------------------------X

      Plaintiff Jacqueline Lester ("Ms. Lester") alleges against Defendants 9300 Realty Management, Inc. ("9300 Realty" or the "Company"), Steven Croman ("Croman") and Oren Goldstein ("Goldstein") (collectively, "Defendants") as follows:

**PRELIMINARY STATEMENT**

      1.     Steven Croman, dubbed the "Bernie Madoff of real estate" by the New York State Attorney General, is the founder and Chief Executive Officer of 9300 Realty. Currently, Croman is being charged criminally and sued by the New York State Attorney General's Office for having harassed, coerced and exploited rent-regulated tenants through a business model predicated on fraudulent and illegal practices, flouting the laws designed to protect the safety and well-being of New York residents.

      2.     Croman's unlawful actions also spread within 9300 Realty, where he and his Chief Operating Officer, Goldstein, punished loyal and honest employees like Ms. Lester who became pregnant and took maternity leave.

      3.     As detailed below, Ms. Lester was discriminated against by her employer for taking pregnancy-related medical leave, even though she returned to work only eight weeks after

giving birth. When Ms. Lester disclosed that she was pregnant again, 9300 Realty generated false and pretextual reasons to demonstrate poor performance, and then fired her.

4. Like many of the helpless tenants Croman bullied from their homes, Ms. Lester was terminated at a time when she was the most vulnerable and in need of income and medical benefits to support her family.

5. Fortunately, federal, state and city anti-discrimination and retaliation laws are designed to protect employees like Ms. Lester from Defendants' deplorable and unlawful practices.

6. Ms. Lester brings this action to redress Defendants' unlawful discrimination, retaliation and interference with her protected rights, and to compensate her for the substantial financial and emotional damages she has endured, and will endure, because of the unlawful treatment and her termination.

## NATURE OF THE CLAIMS

7. The unlawful discrimination, retaliation and interference described herein was committed in violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. ("NYSHRL"), the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq*. ("NYCHRL").

## ADMINISTRATIVE PREREQUISITES

8. Ms. Lester has filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue prior to this action.

9. A copy of this Complaint will be served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

10. Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII and the FMLA pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States. This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

13. Plaintiff Jacqueline Lester is a former Leasing Director at 9300 Realty and worked at the 632 Broadway, New York, NY 10012 location. At all relevant times herein, Ms. Lester has met the definition of "employee" and/or "eligible employee" under all applicable statutes.

14. Defendant 9300 Realty Management, Inc. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located in New York. 9300 Realty Management Inc. is a wholly owned subsidiary of 9300 Realty Inc. and operates as a real estate management company responsible for managing properties owned by Defendant Steven Croman through various interrelated corporate entities. Upon information and belief, 9300 Realty owns approximately 150 buildings consisting of almost 2,500 units. At all relevant times herein, 9300 Realty met the definition of "employer" under all applicable statutes.

3

15. Defendant Steven Croman is the founder and Chief Executive Officer of 9300 Realty. At all relevant times, Defendant Croman has met the definition of an "employer" and/or "aider and abettor" under all applicable statutes.

16. Defendant Oren Goldstein is the Chief Operating Officer of 9300 Realty. At all relevant times, Defendant Goldstein has met the definition of an "employer" and/or "aider and abettor" under all applicable statutes.

## FACTUAL ALLEGATIONS

17. In or around July 2012, Ms. Lester began her employment with 9300 Realty as a Leasing Director.

18. Prior to commencing her employment with 9300 Realty, Ms. Lester held several jobs with other well-known management companies in the New York City area, including Heller Realty and Solow Realty and Development, developing a long and distinguished career in the real estate field.

19. During her employment with 9300 Realty, Ms. Lester reported directly to Croman and Goldstein.

20. As Leasing Director, Ms. Lester was responsible for overseeing the marketing and leasing of vacant apartments in approximately 150 residential properties.

21. Ms. Lester was a successful and valued employee, as evidenced by bonuses, raises and regular increases in job responsibilities during her first two years.

**Ms. Lester is Retaliated Against After Taking Maternity Leave**

22. In October 2014, Ms. Lester told Goldstein that she was pregnant with her first child.

23. Because 9300 Realty has no formal Human Resources department and no written maternity leave policy, Ms. Lester was forced to negotiate the terms of her own leave with Goldstein.

24. In or around March 2015, Ms. Lester took leave when her child was born. Even though she was not in the office, Ms. Lester diligently continued to stay informed about work-related issues through telephone and email contact. Indeed, had she not been checking her emails, 9300 Realty would have subjected her to the loss of medical benefits at a time that she needed them the most.

25. Specifically, while on leave, 9300 Realty emailed to employees a form to fill out within 24 hours to prevent cancellation of insurance. No one from 9300 Realty alerted Ms. Lester of the need to fill out the form and return it within 24 hours. Ms. Lester would have lost her insurance had she not been diligently attending to work-related matters.

26. Ms. Lester returned to work only eight weeks after giving birth.

27. When she returned to the office, Croman and Goldstein treated her differently than prior to her leave, and differently from similarly-situated employees who had not taken time off for childbirth.

28. For example, in or around July 2015, Ms. Lester requested from Goldstein her annual performance review that 9300 Realty generally gives to employees in July.

29. Ms. Lester's understanding was that salary increases were given in connection with the performance reviews.

30. Despite Ms. Lester asking Goldstein multiple times for her performance review, he refused. Goldstein told Ms. Lester that she had no "legal right" to a performance review after taking maternity leave.

31. For the first time since her employment began at 9300 Realty, Ms. Lester did not receive a performance review.

32. Given her long hours, Ms. Lester needed space in the office to pump breast milk. Defendants told Ms. Lester to use the office of a male employee, who requested that Ms. Lester provide him with her pumping schedule ahead of time before he vacated his office for her use.

33. Incredulously, Goldstein called Ms. Lester during the times when she was pumping milk and would comment about Ms. Lester using a breast pump, including calling it "gross."

34. After returning to work, Croman and Goldstein also were less responsive to Ms. Lester's communications and appeared to be at times trying to avoid interacting with her. When Croman or Orenstein did interact with Ms. Lester, Ms. Lester felt they were more aggressive in their communications than before she took leave.

35. For example, in or around August 2015, Croman berated Ms. Lester over an issue with a property in a manner, and at a volume, unprecedented even by the office's already dismal standards.

36. In December 2015, Ms. Lester realized that she did not receive a year-end bonus in contrast to other employees at 9300 Realty. Employees regularly received bonuses, and this was the first time that she did not receive a year-end bonus since she began working for the Company.

**Ms. Lester is Terminated After Disclosing She is Pregnant Again**

37. In or around December 2015, Ms. Lester became pregnant a second time. Unfortunately, what should have been a joyous occasion was marred by the discriminatory treatment following her first child.

6

38. Indeed, Ms. Lester was apprehensive and anxious about Croman's and Goldstein's reactions. Her fears about further discrimination and retaliation proved true.

39. In January 2016, Ms. Lester asked why she did not receive a bonus – the second denial of compensation since she had returned from maternity leave.

40. Goldstein told Ms. Lester that her year-end bonus was "under review" because the Company was worried about "investing in someone that might leave the company soon."

41. Ms. Lester told Orenstein that she was pregnant and again explained that she was uncomfortable to come forward with the news given the way she had been treated since returning from her leave. Ms. Lester also said that she hoped that news of her pregnancy would not affect the decision to give her a bonus for the year.

42. Without congratulating Ms. Lester on her pregnancy, Goldstein responded vaguely that he and Croman would continue to think about whether Ms. Lester would be awarded a bonus after all, and claimed that her pregnancy would not impact the decision.

43. However, Ms. Lester made multiple attempts to follow-up about the bonus. However, Orenstein or Croman avoided giving Ms. Lester a definitive answer, and ultimately Ms. Lester never received a bonus.

44. Croman and Goldstein took every opportunity to disparage and find fault with Ms. Lester's performance. Indeed, Ms. Lester's performance, once exemplary, suddenly became marginal and poor, despite her consistency and continued hard work. Clearly, Defendants were creating a pretextual paper trail to justify her termination.

45. By way of example only, Ms. Lester was accused of "shouting" around the office that "9300 Realty hates women." This accusation was based purportedly on a short conversation between her and a colleague regarding the women's restroom repeatedly being "out of order."

46. By late February 2016, it was clear to Ms. Lester that Croman and Goldstein wanted to fire her.

47. In a series of emails that seemed to deliberately "distort the facts" of the situation, Ms. Lester was accused of "watching tv or a movie" on her phone during the day, ignoring the fact that throughout her employment, she often wore headphones to reduce background noise.

48. Ms. Lester had consistently made clear that the workplace environment fostered by Croman, in which employees habitually shout and swear, was distracting and impeded her ability to focus on her duties.

49. Nonetheless, in an email on March 29, 2016, 9300 Realty made an obvious attempt to create a pretextual justification for the eventual termination of Ms. Lester's employment.

50. Specifically, this email from Goldstein referenced her supposed, undefined disciplinary history and gave her a "final warning" based on alleged insubordination. This email and the purported "final warning" were completely without basis.

51. In the weeks following this exchange, Defendants made it obvious that Ms. Lester's employment with 9300 Realty was nearing its end.

52. Despite the fact that Ms. Lester reported directly to Goldstein, he ignored her communications, even refusing to sign her expense checks.

53. 9300 Realty also began searching for a replacement for Ms. Lester.

54. On May 3, 2016, after a replacement for Ms. Lester was selected, Goldstein and Croman called a meeting with Ms. Lester and informed her that her employment with the Company was being terminated.

55. Rightfully upset, Ms. Lester asked whether her performance had ever been less than outstanding.

56. In response, Ms. Lester was told that she was not being fired based on her work performance. Instead, the reason she was given was that she was being fired for her "attitude."

57. At one point, Croman stated that he would be willing to tell other employees that she was leaving because she "needed to spend more time with [her] family."

58. This comment made it clear to Ms. Lester that Defendants were pushing her out because of her pregnancies and her need to take maternity leave. In sum, 9300 Realty believed that it was free to conduct itself outside of the federal, state and city laws designed to protect women from exactly such bias.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Title VII)**
*Against Defendant 9300 Realty*

59. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

60. By the actions described above, among others, 9300 Realty discriminated against Plaintiff on the basis of her gender, sex and/or pregnancy in violation of Title VII by treating her differently from and less favorably than similarly-situated employees who were not pregnant, including, but not limited to, terminating her employment because of her pregnancy.

61. As a direct and proximate result of 9300 Realty's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of Title VII)**
*Against Defendant 9300 Realty*

62. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

63. By the actions described above, among others, 9300 Realty has retaliated against Plaintiff in violation of Title VII by, *inter alia*, terminating her for her protected complaints of discrimination.

64. As a direct and proximate result of 9300 Realty's unlawful retaliatory conduct in violation of the Title VII, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

## THIRD CAUSE OF ACTION
**(Discrimination in Violation of NYSHRL)**
*Against All Defendants*

65. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

66. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender, sex and/or pregnancy in violation of the NYSHRL by treating her differently from and less favorably than similarly-situated employees who were not pregnant, including, but not limited to, terminating her employment because of her pregnancy.

67. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

68. To the extent that Defendants Croman and Goldstein are not individually liable as Plaintiff's "employer," they are liable under the NYSHRL because they aided and abetted the unlawful conduct.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)
*Against All Defendants*

69. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

70. By the actions described above, among others, Defendants have retaliated against Plaintiff in violation of the NYSHRL by, *inter alia*, terminating her for her protected complaints of discrimination.

71. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

72. To the extent that Defendants Croman and Goldstein are not individually liable as Plaintiff's "employer," they are liable under the NYSHRL because they aided and abetted the unlawful conduct.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

73. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

74. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender, sex and/or pregnancy in violation of the NYCHRL by treating her differently from and less favorably than similarly-situated employees who were not pregnant, including, but not limited to, terminating her employment because of her pregnancy.

75. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is

entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

76. Defendant's unlawful discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

77. To the extent that Defendants Croman and Goldstein are not individually liable as Plaintiff's "employer," they are liable under the NYCHRL because they aided and abetted the unlawful conduct.

## SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

78. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

79. By the actions described above, among others, Defendants have retaliated against Plaintiff in violation of the NYCHRL by, *inter alia*, terminating her for her protected complaints of discrimination.

80. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

81. Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

82. To the extent that Defendants Croman and Goldstein are not individually liable as Plaintiff's "employer," they are liable under the NYSHRL because they aided and abetted the unlawful conduct.

### SEVENTH CAUSE OF ACTION
### (Interference in Violation of FMLA)
### *Against All Defendants*

83. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

84. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA.

85. At all times relevant herein, Defendant 9300 Realty was and is a "covered employer" within the meaning of the FMLA.

86. By the actions described above, among others, Defendant 9300 Realty violated the FMLA by unlawfully interfering with, restraining or denying the exercise of Plaintiff's rights by, *inter alia*, terminating her employment as a method of preventing her from exercising her rights under the FMLA in the future.

87. As a direct and proximate result of Defendant 9300 Realty's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

88. Defendant 9300 Realty's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

89. As a direct and proximate result of Defendant 9300 Realty's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is

entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## EIGHTH CAUSE OF ACTION
### (Retaliation in Violation of the FMLA)
*Against All Defendants*

90. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA.

91. At all times relevant herein, Defendant 9300 Realty was and is a "covered employer" within the meaning of the FMLA.

92. By the actions described above, among others, Defendant 9300 Realty violated the FMLA by unlawfully retaliating against Plaintiff for exercising rights protected by the FMLA by, *inter alia*, denying her a performance review, denying her an annual pay raise, denying her a year-end bonus and terminating her in retaliation for asserting her rights under the FMLA and subjecting her to an adverse employment action that would reasonably dissuade a reasonable person from exercising rights protected by the FMLA.

93. As a direct and proximate result of Defendant 9300 Realty's unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

94. Defendants' unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

C. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D. An award of punitive damages in an amount to be determined at trial;

E. An award of liquidated damages in an amount to be determined at trial;

F. Pre-judgment interest on all amounts due;

G. An award of Plaintiff's reasonable attorneys' fees and costs; and

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 10, 2017  
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _/s/ Jeanne Christensen_  
Jeanne M. Christensen  
Bryan L. Arbeit

85 Fifth Avenue  
New York, NY 10003  
Telephone: (212) 257-6800  
Facsimile: (212) 257-6845  
jchristensen@wigdorlaw.com  
barbeit@wigdorlaw.com

*Counsel for Plaintiff*